# United States Court of Appeals
# For the Second Circuit

August Term 2024

Argued: September 18, 2024
Decided: January 28, 2025

No. 23-1013-cv

UNKECHAUG INDIAN NATION, HARRY B. WALLACE,

*Plaintiffs-Appellants,*

*v.*

BASIL SEGGOS, in his official capacity as the
Commissioner of the New York State Department of
Environmental Conservation, NEW YORK STATE
DEPARTMENT OF ENVIRONMENTAL CONSERVATION,

*Defendants-Appellees,*[*]

Appeal from the United States District Court
for the Eastern District of New York
No. 2:18CV01132,
William F. Kuntz, II, *Judge.*

Before:     LYNCH, ROBINSON, and MERRIAM, *Circuit Judges.*

The Unkechaug Indian Nation ("Nation") and its Chief Harry B. Wallace challenge the enforcement by the New York State Department of Environmental Conservation ("DEC") of regulations prohibiting the harvesting of American

---

[*] The Clerk's office is directed to amend the caption as reflected above.

glass eels. Central to plaintiffs' challenge is the Andros Order, a 1676 agreement between the Royal Governor of New York and the Nation that allowed members of the Nation to "freely whale or fish for or with" the colonists. App'x at 3007. The Nation and Wallace contend that the Andros Order is a valid and enforceable federal treaty preempting the DEC's fishing regulations as applied to the Nation's members in the Nation's customary off-reservation fishing waters.

Plaintiffs filed this action in the United States District Court for the Eastern District of New York (Kuntz, *J.*) against the DEC and its Commissioner Basil Seggos in his official capacity. Plaintiffs sought declaratory and injunctive relief to prevent the DEC from enforcing New York fishing regulations, including those barring the harvesting of glass eels, against members of the Nation in "its Reservation waters and customary Unkechaug fishing waters." App'x at 26. The District Court granted summary judgment to defendants holding, in relevant part, that the Andros Order is not federal law preempting New York's fishing regulations.

We hold that the Eleventh Amendment bars plaintiffs' claims against the DEC, but that the *Ex parte Young* exception to sovereign immunity applies to the claims for declaratory and injunctive relief asserted against Commissioner Seggos in his official capacity. We also hold that the District Court did not abuse its discretion in failing to dispose of the parties' *Daubert* motions or privilege disputes before ruling on the motions for summary judgment. Finally, we hold that the Andros Order is not federal law binding on the United States because it was entered before the Confederal period, on behalf of the British Crown, and has not been ratified by the United States. Because the Andros Order is not federal law, it does not preempt New York's fishing regulations, including those prohibiting the harvesting of American glass eels in off-reservation New York waters.

The judgment of the District Court is therefore **AFFIRMED**.

JAMES F. SIMERMEYER, Law Offices of James F. Simermeyer, P.C., Melville, NY, *for Plaintiffs-Appellants*.

ELIZABETH A. BRODY (Barbara D. Underwood, Judith N. Vale, *on the brief*), *for* Letitia James, Attorney General for the State of New York, New York, NY, *for Defendants-Appellees*.

SARAH A. L. MERRIAM, *Circuit Judge*:

The Unkechaug Indian Nation (the "Nation") is a sovereign Native American tribe recognized under New York state law. *See* N.Y. Indian Law §2 (McKinney 2013).[1] The Nation has historically inhabited Long Island, New York, and today its reservation lands are situated near Mastic, New York. Fishing and whaling have long held historical, economic, and cultural significance to the Nation.

The Nation and its Chief Harry B. Wallace (collectively "plaintiffs") challenge the enforcement by the New York State Department of Environmental Conservation ("DEC") of regulations prohibiting the harvesting of American glass eels. *See* N.Y. Comp. Codes R. & Regs. tit. 6, §§10.1(a), 10.1(b)(13), 40.1(e), 40.1(o).[2] Central to plaintiffs' challenge is the Andros Order, a 1676 agreement

[1] The Nation's tribal status has been recognized under the federal common law. *See Gristede's Foods, Inc. v. Unkechuage Nation*, 660 F. Supp. 2d 442, 469-77 (E.D.N.Y. 2009). The Nation has not been federally recognized by the United States Department of the Interior.

[2] In October 2021, when the parties briefed summary judgment, sections 40.1(e) and (o) were codified at subsections (f) and (i), respectively.

between the Royal Governor of New York and the Nation that allowed members of the Nation to "freely whale or fish for or with Christians or by themselves and dispose of their effects as they thinke good according to law and Custome of the Government." App'x at 3007.[3] Plaintiffs contend that the Andros Order is a valid and enforceable federal treaty preempting the DEC's fishing regulations as applied to the Nation's members in the Nation's customary off-reservation fishing waters.

Plaintiffs filed this action in the United States District Court for the Eastern District of New York (Kuntz, *J.*) against the DEC and its Commissioner Basil Seggos in his official capacity (collectively "defendants"). Plaintiffs sought declaratory and injunctive relief to prevent the DEC from enforcing New York fishing regulations, including those barring the harvesting of glass eels, against members of the Nation in "its Reservation waters and customary Unkechaug fishing waters." App'x at 26. The District Court granted summary judgment to defendants holding, in relevant part, that the Andros Order is not federal law preempting New York's fishing regulations. Plaintiffs timely appealed.

For the reasons that follow, we hold that the Eleventh Amendment bars

---

[3] Throughout this Opinion, quotations from the Andros Order use the original spelling and punctuation of that document.

plaintiffs' claims against the DEC, but that the *Ex parte Young*[4] exception to sovereign immunity applies to the claims for declaratory and injunctive relief asserted against Commissioner Seggos in his official capacity. We also hold that the District Court did not abuse its discretion in failing to dispose of the parties' *Daubert*[5] motions or privilege disputes before ruling on the motions for summary judgment. Finally, we hold that the Andros Order is not federal law binding on the United States because it was entered before the Confederal period, on behalf of the British Crown, and has not been ratified by the United States. Because the Andros Order is not federal law, it does not preempt New York's fishing regulations, including those prohibiting the harvesting of American glass eels in off-reservation New York waters.

Accordingly, we AFFIRM the judgment of the District Court.

## I.    Background

### A.    The American Eel and Conservation Efforts

Historically, American eels were abundant in East Coast waterways, but their numbers have declined significantly since the 1970s. "Glass eels" are

---

[4] *Ex parte Young*, 209 U.S. 123 (1908).

[5] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

miniature, transparent juvenile eels ranging in length from two to four inches. A lucrative overseas trade for glass eels has emerged due to the demand for glass eels to serve as seed stock for aquaculture facilities in Asia. The increasing demand for American glass eels has caused market prices to soar to over $2,000 per pound. These high prices and the relative ease of harvesting glass eels have encouraged poaching and over-harvesting in many states, giving "rise to serious concern as to the future viability of the eel industry." App'x at 1371.

In an effort to preserve the American eel population, New York has implemented various regulatory measures through federally-mandated Fishery Management Plans.[6] As relevant here, New York law prohibits the harvesting of juvenile American eels under nine inches long. *See* N.Y. Comp. Codes R. & Regs. tit. 6, §§10.1(a), 10.1(b)(13), 40.1(e), 40.1(o). New York does not regulate fishing by members of the Nation in the Nation's reservation waters. *See* N.Y. Env't

---

[6] The Atlantic States Marine Fisheries Commission ("ASMFC") is a congressionally authorized interstate compact organization that is responsible for coordinating fishery management for Atlantic coastal fisheries, including the American eel. *See generally* 16 U.S.C. §§5101, *et seq.* New York is one of fifteen member states comprising the ASMFC. In an attempt to preserve the American eel population, the ASMFC has implemented various regulatory measures, which are carried out by member states through Fishery Management Plans ("FMP"). *See id.* §§5102(1)-(2), 5104(a). The ASMFC first adopted an FMP for American eels in 1999. The FMP requires ASMFC member states to impose fishing regulations with respect to the American eel in an attempt to conserve the species. *See id.* §5104(b).

Conserv. Law §11-0707(8) ("The enrolled members of an Indian tribe having a reservation located wholly or partly within the state and such other Indians as are permitted by the tribal government having jurisdiction over such reservation may hunt, fish, trap upon such reservation subject only to rules, regulations and fish and wildlife laws established by the governing body of such reservation."). Defendants-Appellees confirmed this in their brief, stating: "New York does not dispute the Unkechaug Nation's sovereignty over its reservation lands in Long Island and is not seeking to regulate fishing that takes place on the Unkechaug reservation." Appellees' Br. at 8-9 n.2.

B.    DEC Enforcement of the Regulations against the Nation

In March 2014, DEC officers encountered eight fishermen, including members of the Nation, harvesting glass eels in off-reservation waters. When confronted, the fishermen presented the DEC officers with a letter written on the Unkechaug Tribal Council's letterhead, signed by Chief Wallace, stating that four named individuals were "authorized to engage in traditional glass eel fishing pursuant to the Tribal Customs and practices of the Unkechaug Indian Nation." App'x at 3002. The DEC issued "criminal summons to" the fisherman for harvesting glass eels in violation of New York law and seized fishing equipment

and over seven pounds of glass eels. App'x at 4489. Six of the eight fishermen pled "guilty to violation[-]level offenses." App'x at 2780.

From approximately 2014 to 2016, the Nation attempted to export several shipments of glass eels to Hong Kong. Some of these shipments were intercepted and seized by the DEC. Following an April 2016 interception of a glass eel shipment, the Nation filed a lawsuit against the DEC in the Supreme Court of the State of New York, County of Queens, alleging that the DEC's interception efforts had violated the Nation's sovereign fishing rights and interfered with its religious practices. The Nation requested damages for the interception of the April 2016 glass eel shipment, as well as injunctive relief. The state court dismissed the complaint on the DEC's motion for lack of subject matter jurisdiction and for failure to state a cause of action.

C.     Procedural Background

On February 21, 2018, plaintiffs initiated this action by filing a Verified Complaint against defendants alleging that New York's fishing regulations interfere with the Nation's federally recognized "right to fish freely on reservation waters and in customary fishing waters." App'x at 17. The Verified

Complaint asserts four causes of action; only two are before us on appeal,[7] and both depend upon the claim that federal law preempts the challenged New York regulations. Specifically, plaintiffs contend that a 1676 "treaty" between the Nation and the Royal Governor of New York, Edmund Andros, is "the Supreme Law of the Land and enforceable against local and state regulations that would interfere with Unkechaug fishing rights and rights to sell fish." App'x at 25; *see also id.* at 22 ("Regulation by the Federal government of Indian Reservation lands is absolute and prevails over state and local regulations pursuant to [the] Supremacy Clause of the United States Constitution which includes treaties entered into by Indians.").

In their prayer for relief, plaintiffs seek: (1) "A declaration that the Nation, Harry B. Wallace as Chief and individually, its officials, and its . . . customary

---

[7] Plaintiffs have forfeited any argument about the other two claims, having failed to meaningfully brief them on appeal. Plaintiffs contend in a footnote that the District Court erred in ruling that 25 U.S.C. §232 (expanding New York's criminal jurisdiction over tribal reservations) does not preempt New York's fishing regulations. *See* Appellants' Br. at 11, n.1. In another footnote, they assert that because the District Court failed to consider the testimony of their expert Federick Moore, we should "reverse the denial of Plaintiffs' Freedom of Expression of Religion claim." *Id.* at 12 n.2. We deem these arguments forfeited and do not address them further. *See Revitalizing Auto Cmtys. Env't Response Tr. v. Nat'l Grid USA*, 10 F.4th 87, 100 n.9 (2d Cir. 2021) ("We ordinarily deem an argument to be forfeited where it has not been sufficiently argued in the briefs, such as when it is only addressed in a footnote." (citations and quotation marks omitted)).

Unkechaug fishing waters are immune from [New York's] . . . fishing regulations and that the [defendants] lack authority to enforce fishing regulations under New York State Environmental Laws" against them; (2) "A permanent injunction against [defendants'] attempts to impose [New York's] fishing restriction on eels . . . on . . . customary Unkechaug fishing waters and any attempts by [defendants] or [DEC's] officials, employees or legal representatives to enforce the civil or criminal laws against the Nation, Harry B. Wallace as Chief or in his individual capacity, its officials, and its employees;" and (3) "A permanent injunction against any attempts by [defendants] and [DEC's] officials and attorneys to impose . . . criminal prosecution under the Environmental Laws against the Nation, Harry Wallace as Chief and individually, its officials and employees in relation to the conduct on April 6, 2016 when eels caught on the Poospatuck Indian Reservation [were] confiscated from Unkechaug Indians." App'x at 26.

After the close of discovery, and pursuant to the briefing schedule set by the District Court, each party filed a motion seeking to preclude the testimony of the other's expert witnesses. Shortly thereafter, the parties filed cross-motions for summary judgment. The District Court granted defendants' motion for summary judgment holding, in relevant part, that (1) the Eleventh Amendment does not

bar the claims asserted against Commissioner Seggos, and (2) the Andros Order

is not federal law preempting New York's fishing regulations. *See generally*

*Unkechaug Indian Nation v. N.Y. Dep't of Env't Conservation*, 677 F. Supp. 3d 137

(E.D.N.Y. 2023). The District Court also denied plaintiffs' motion for summary

judgment and terminated, without comment, several pending motions, including

the parties' *Daubert* motions. The Nation and Chief Wallace timely appealed.

## II. <u>Standard of Review</u>

The standard by which we review the grant of summary judgment is well

established:

> We review de novo a district court's decision to grant summary
> judgment, construing the evidence in the light most favorable to the
> party against whom summary judgment was granted and drawing all
> reasonable inferences in that party's favor. Summary judgment is
> required if there is no genuine dispute as to any material fact and the
> movant is entitled to judgment as a matter of law.

*Covington Specialty Ins. Co. v. Indian Lookout Country Club, Inc.*, 62 F.4th 748, 752

(2d Cir. 2023) (per curiam) (citations and quotation marks omitted).[8]

---

[8] "The same standard applies where, as here, the parties filed cross-motions for summary judgment and the district court granted one motion, but denied the other." *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001).

## III.  Discussion

### A.  The Eleventh Amendment does not bar this action against Commissioner Seggos in his official capacity.

Before reaching the merits of plaintiffs' appeal, we first address

defendants' contention that the Eleventh Amendment bars this action because:

(1) the DEC is a state entity not subject to suit; and (2) the *Ex parte Young*

exception to sovereign immunity does not apply to the claims against

Commissioner Seggos because plaintiffs' claims "functionally seek[] to divest the

State of its sovereign control over public lands."[9] Appellees' Br. at 54 (citation to

record and quotation marks omitted).

Plaintiffs assert that we cannot consider defendants' Eleventh Amendment

arguments because defendants failed to cross-appeal the District Court's

rejection of this defense. Plaintiffs' argument ignores the well-established

_____

[9] "The Eleventh Amendment does not automatically destroy original jurisdiction, but rather grants the State a legal power to assert a sovereign immunity defense should it choose to do so. The State can waive the defense and a court need not raise the defect on its own. Unless the State raises the matter, a court can ignore it." *Donohue v. Cuomo*, 980 F.3d 53, 77 n.15 (2d Cir. 2020) (citation and quotation marks omitted). Additionally, we have "previously declined to address Eleventh Amendment issues, even where the issue *was* raised by a state defendant, so as to avoid unnecessarily taking up a difficult constitutional issue." *Id.* Here, defendants have raised an Eleventh Amendment immunity defense that does not implicate "taking up a difficult constitutional issue." *Id.* Accordingly, we address the issue of sovereign immunity before turning to the merits of plaintiffs' appeal.

principle that "[a]n appellee may, without taking a cross-appeal, urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court or an insistence upon matter overlooked or ignored by it." *Drax v. Reno*, 338 F.3d 98, 105 (2d Cir. 2003) (citation and quotation marks omitted). Of course, "an appellee who does not cross-appeal may not attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary." *Jennings v. Stephens*, 574 U.S. 271, 276 (2015) (citation and quotation marks omitted). Defendants here do "not seek to enlarge [their] own rights . . . but seek[] merely to sustain a judgment on grounds with support in the record." *Drax*, 338 F.3d at 106 (citation and quotation marks omitted). We therefore consider defendants' Eleventh Amendment arguments.

"Generally, States are immune from suit under the terms of the Eleventh Amendment and the doctrine of sovereign immunity." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021). States also generally "enjoy Eleventh Amendment immunity" against suits brought by Native American tribes. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 269 (1997). The parties do not dispute that the DEC is a state entity, and we agree. *See Silva v. Farrish*, 47 F.4th 78, 84 (2d Cir.

2022). Accordingly, the Eleventh Amendment bars plaintiffs' claims against the DEC.[10]

We agree with the District Court, however, that the *Ex parte Young* "exception to Eleventh Amendment immunity" applies to claims asserted against Commissioner Seggos in his official capacity. *Unkechaug Indian Nation*, 677 F. Supp. 3d at 148. The *Ex parte Young* doctrine provides "a narrow exception" to Eleventh Amendment immunity "that allows certain private parties to seek judicial orders in federal court preventing state executive officials from enforcing state laws that are contrary to federal law." *Silva*, 47 F.4th at 84 (citation and quotation marks omitted). "[I]n determining whether the *Ex parte Young* doctrine applies . . . a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *W. Mohegan Tribe & Nation v. Orange Cnty.*, 395 F.3d 18, 21 (2d Cir. 2004) (per curiam) (citation and quotation marks omitted). Applying this "straightforward inquiry," *id.*, we find that the allegations in the Verified Complaint satisfy the requirements of *Ex parte Young*. The Nation alleges

---

[10] Because we dismiss plaintiffs' claims against the DEC on sovereign immunity grounds at the outset, we refer to the defendant in the singular throughout the remainder of this opinion.

that (1) the ongoing enforcement of New York fishing regulations violates its federally-guaranteed rights, and (2) the requested relief would prospectively end the alleged violations.[11] Thus, the *Ex parte Young* exception to sovereign immunity applies to the claims asserted against Seggos in his official capacity.

Defendant insists that this does not end the inquiry, asserting that the Supreme Court's decision in *Coeur d'Alene* bars plaintiffs' claims. We disagree. We have previously considered *Coeur d'Alene* in the context of assessing whether enforcement of New York fishing regulations against a Native American tribe violated the tribe's federally protected fishing rights. *See Silva*, 47 F.4th at 85. We conclude in this matter, as we did in *Silva*, that *Coeur d'Alene* does not bar plaintiffs' claims.

In *Coeur d'Alene*, a Native American tribe sued the State of Idaho, state agencies, and several state officials in their individual capacities, seeking to establish its entitlement to the exclusive use, occupancy, and right to quiet enjoyment of certain submerged lands that, while within the boundaries of the

---

[11] Because plaintiffs' request "for declaratory relief adds nothing to the prayer for injunction" and "does not impose *upon the State* a monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials," plaintiffs' claims seeking forward-looking declaratory relief fall within the *Ex parte Young* exception to Eleventh Amendment immunity. *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 646 (2002) (citation and quotation marks omitted).

tribe's reservation, had been claimed and governed by Idaho for more than a century. *See* 521 U.S. at 264-66. The tribe also sought a declaration that all Idaho laws and regulations purporting to regulate or affect that land in any way were invalid. *See id.* at 265. The Supreme Court considered whether the tribe's lawsuit fell within the *Ex parte Young* exception to Eleventh Amendment immunity and found, under the circumstances of that case, that it did not. *See id.* at 281. The Court reasoned that the requested relief would have major implications on "Idaho's sovereign authority" because it was "the functional equivalent of quiet title to land," and that, as a result, the lawsuit was barred by state sovereign immunity. *Id.* at 282; *see also id.* at 287–88. In sum, under *Coeur d'Alene*, a "suit cannot proceed if it asserts an 'entitlement to the exclusive use and occupancy and the right to quiet enjoyment of . . . lands.'" *Silva*, 47 F.4th at 85 (quoting *Coeur d'Alene*, 521 U.S. at 265).

Relying on *Silva*, the District Court determined that *Coeur d'Alene* does not bar the claims against Seggos because, as was true in *Silva*, plaintiffs here "do not seek to divest the state of its ownership of any lands or waters," but rather "seek a declaration . . . that [defendant has] interfered with their established right to fish in Reservation and customary Unkechaug fishing waters without regulatory

16

interference by the State, and to permanently enjoin the [defendant] from interfering with said right in the future." *Unkechaug Indian Nation*, 677 F. Supp. 3d at 152 (citations and quotation marks omitted). The District Court concluded that plaintiffs' requested relief "neatly accords with *Silva*," and *Coeur d'Alene* does not bar the claims against Seggos. *Id.* We reach the same conclusion.

Defendant asserts that *Silva* is distinguishable because it involved narrower claims than those asserted here. Not so. As was true in *Silva*, plaintiffs' requested relief in this case "would not transfer ownership and control of the [waters] from the state to an Indian tribe. Nor would it allow the plaintiffs to prevent others from fishing in the [waters]. It would merely resolve the plaintiffs' individual claims that they have their own right to fish there." *Silva*, 47 F.4th at 85. Also, as in *Silva*, "[i]f the plaintiffs succeed in obtaining their requested relief, at most the state would need to tailor its regulatory scheme to respect the plaintiffs' fishing rights." *Id.* at 86. The relief sought by plaintiffs "in this case is not a right to *exclude all others*." *Id.* at 85 n.7 (citation and quotation marks omitted). Thus, because plaintiffs' "requested relief would not divest the state of its ownership of the [waters] this suit is not effectively one against the state," and "plaintiffs' claims seeking prospective relief against [Commissioner Seggos] fall

within the *Ex parte Young* exception to state sovereign immunity." *Id.* at 86.

Accordingly, we hold that plaintiffs' claims seeking prospective declaratory and injunctive relief against Commissioner Seggos in his official capacity fall within the *Ex parte Young* exception to Eleventh Amendment sovereign immunity. We turn next to the merits of the appeal.

B.  <u>The District Court did not abuse its discretion in failing to dispose of the *Daubert* motions, or in failing to rule on defendant's claims of privilege, before deciding the cross-motions for summary judgment.</u>

Before reaching the question of whether the Andros Order is valid federal law, we pause to briefly address plaintiffs' arguments that the District Court erred by ruling on the cross-motions for summary judgment without first (1) disposing of the parties' respective *Daubert* motions, and (2) conducting an *in camera* review of documents defendant withheld from discovery as privileged and adjudicating those claims of privilege.

We generally review a district court's "evidentiary rulings for abuse of discretion, reversing only if we find manifest error." *United States v. Miller*, 626 F.3d 682, 688 (2d Cir. 2010) (citation and quotation marks omitted). We also review a district court's discovery rulings for abuse of discretion, with the understanding that a "district court enjoys wide discretion in its handling of pre-

trial discovery." *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 68 (2d Cir. 2003) (citation and quotation marks omitted).

It is generally the better practice for a district court to resolve any pending *Daubert* motions or discovery disputes before adjudicating dispositive motions, so as to conclusively define the summary judgment record. *See Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997) ("Because the purpose of summary judgment is to weed out cases in which there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law, it is appropriate for district courts to decide questions regarding the admissibility of evidence on summary judgment" because it "conserves the resources of the parties, the court, and the jury." (citations and quotation marks omitted)). But under the circumstances here, the District Court did not abuse its discretion – let alone commit manifest or clear error – in failing to resolve the *Daubert* motions or plaintiffs' discovery objections because (1) the District Court did not rely on the expert opinions, which are not relevant to the question of whether the Andros Order is valid federal law,[12] and (2) the District Court did not rely on or, from

---

[12] The Nation's expert Dr. John Strong provided testimony as to the *meaning* of the Andros Order, and defendants' expert Toni M. Kerns provided testimony relevant to the parties' arguments implicating the conservation necessity doctrine. Neither informs

what we can discern from the record, otherwise consider the privileged material

in reaching its decision. *See, e.g.*, *City of New York v. Grp. Health Inc.*, 649 F.3d 151,

156 (2d Cir. 2011) (finding no error in district court's failure to consider an expert

report that was irrelevant to its decision).

Nevertheless, plaintiffs now contend that the documents withheld as

privileged could have provided additional evidence with which to oppose

summary judgment – but present no argument as to how that evidence might

have resulted in a different outcome. Plaintiffs did not claim at summary

judgment any inability to "present facts essential to justify [their] opposition"

because of the District Court's failure to rule on the privilege issues. Fed. R. Civ.

P. 56(d). If plaintiffs had, then the District Court could have "issue[d] an[]

appropriate order." *Id.* But by failing to present an affidavit or declaration to the

District Court pursuant to Rule 56(d), plaintiffs have forfeited this issue. *See*

*Gurary v. Winehouse*, 190 F.3d 37, 43-44 (2d Cir. 1999). In any event, defendant's

privilege log includes no reference to the Andros Order or other treaties, making

_____

our decision, nor would they have benefitted the District Court. To the extent that Dr.
Strong opined that the Andros Order is a federal treaty binding on the United States,
that would play no role in the District Court's analysis because "experts are not
permitted to present testimony in the form of legal conclusions." *United States v. Articles
of Banned Hazardous Substances Consisting of an Undetermined No. of Cans of Rainbow Foam
Paint*, 34 F.3d 91, 96 (2d Cir. 1994).

it unlikely that any of the requested documents would have any bearing on the determinative question here.

Finding no procedural error, we turn to the crux of the Nation's appeal: Is the Andros Order binding federal law that preempts New York's fishing regulations?

C.    The Andros Order is not federal law.

On May 24, 1676, the royally-appointed colonial Governor of New York, Edmund Andros, issued an "Order" endorsed by the Nation stating:

> Resolved and ordered that [the Unkechaug Nation] are at liberty and may freely whale or fish for or with Christians or by themselves and dispose of their effects as they thinke good according to law and Custome of the Government of which all Magistrates officers or others whom these may concerne are to take notice and suffer the said Indyans so to doe without any manner of lett hindrance or molestacion they comporting themselves civilly and as they ought.

App'x at 3007. Plaintiffs claim that this Order is a valid treaty binding on the United States because the adoption of Article VI of the United States Constitution renders it enforceable. Two clauses of Article VI of the United States Constitution are relevant here: (1) the Debts and Engagements Clause, and (2) the Supremacy Clause.

In interpreting Article VI of the United States Constitution, we begin with

the text. *See Martin v. Hunter's Lessee*, 14 U.S. (1 Wheat.) 304, 338-39 (1816) ("If the text be clear and distinct, no restriction upon its plain and obvious import ought to be admitted, unless the inference be irresistible."); *see also N.L.R.B. v. Noel Canning*, 573 U.S. 513, 557 (2014) ("[W]e interpret the Constitution in light of its text, purposes, and our whole experience as a Nation." (citation and quotation marks omitted)). Based on the text of Article VI, we conclude that the Andros Order does not today bind, nor did it ever bind, the United States.

1. *Debts and Engagements Clause*

Plaintiffs contend that the Andros Order is binding on the United States through the Debts and Engagements Clause of Article VI, which states: "All Debts contracted and Engagements entered into, before the Adoption of this Constitution, shall be as valid against the United States under this Constitution, *as under the Confederation*." U.S. Const. art. VI, cl. 1 (emphasis added). But in making this argument the Nation conflates "Engagements" made during the Confederal period – that is after the American Revolution, when the Articles of Confederation were in effect, formally binding the American States together prior to the adoption of the Constitution – and those entered *before* the Confederal period. *See U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 803 (1995).

The Andros Order was entered in 1676, prior to the formation of the United States, on behalf of the British Crown. Nothing in the text of the Debts and Engagements clause suggests that *pre*-Confederal "Engagements" or agreements on behalf of the British Crown, such as the Andros Order, would bind *the United States* after the ratification of the Constitution. To the contrary, the plain language of the Debts and Engagements Clause limits its application to "Engagements" entered during the Confederation but before the adoption of the Constitution. U.S. Const. art. VI, cl. 1. The purpose of the Debts and Engagements Clause was "to assure creditors that the adoption of the Constitution would not erase existing obligations *recognized under the Articles of Confederation*." *Lunaas v. United States*, 936 F.2d 1277, 1278 (Fed. Cir. 1991) (emphasis added).

It is undisputed that the Andros Order was not made during the Confederal period; indeed, it predates the Confederation by nearly 100 years. Accordingly, we have little trouble concluding based on the plain language of the Debts and Engagements Clause that the Andros Order does not today bind the United States.

2.     *The Supremacy Clause*

Next, plaintiffs contend that the Andros Order is a valid treaty of the United States that overrides New York's regulations under the Supremacy Clause of Article VI, which provides, in relevant part: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land . . . ." U.S. Const. art. VI, cl. 2. The plain language of the Supremacy Clause thus contemplates two types of treaties that are, or will be, "the supreme Law of the Land": (1) treaties that were entered *under the authority of the United States* before the ratification of the Constitution, *i.e.*, those entered during the Confederal period, and (2) future treaties made by the United States *after* the ratification of the Constitution.

As explained above, the Andros Order was entered in 1676, more than 100 years before the adoption of either the Articles of Confederation or the Constitution. It therefore plainly does not fall within the Supremacy Clause's contemplation of future treaties.

The question, therefore, is whether the Andros Order is an enforceable treaty made before the ratification of the Constitution. The placement of the

commas around "or which shall be made" makes very clear that the phrase "under the Authority of the United States" modifies "all Treaties made," as well as "all Treaties . . . which shall be made." Thus, the only pre-existing treaties that are "the supreme Law of the Land" under the Supremacy Clause are those made "under the Authority of the United States," not those made before the United States existed. We thus agree with the reasoning of the Virgina Supreme Court in *Alliance to Save the Mattaponi v. Commonwealth, Department of Environmental Quality ex rel. State Water Control Board*, 621 S.E.2d 78, 94 (Va. 2005) ("*Mattaponi*"). There, the Mattaponi Indian Tribe challenged "a Virginia Water Protection Permit . . . for construction of" a reservoir on the grounds that the permit violated certain aspects of "the 1677 Treaty at Middle Plantation . . . entered into by King Charles II and ancestors of the Mattaponi Indian Tribe (the Tribe)." *Id.* at 83; *see also id.* at 85. The Tribe asserted that Virginia was bound, as a matter of federal law, by the treaty because "the Constitution's Supremacy Clause adopted as federal law treaties made between Indian tribes and the British Crown." *Id.* at 93. The Virginia Supreme Court rejected that argument and concluded that the plain language of the Supremacy Clause does not support a finding that a treaty

entered in 1677 between the British Crown and a Native American tribe was made under federal law.

Like the treaty considered by the Virginia Supreme Court, the Andros Order was executed before the creation of the United States, at a time when the British Crown held "in its utmost extent" the power to make treaties with the Native Americans. *Oneida Indian Nation of N.Y. v. New York* ("*Oneida I*"), 691 F.2d 1070, 1087 (2d Cir. 1982) (citation and quotation marks omitted). The Supremacy Clause's reference to "'Treaties made' . . . does not refer to treaties entered into between the British Crown, by its royal representative, and the Crown's adversaries." *Mattaponi*, 621 S.E.2d at 94; *see also Oneida I*, 691 F.2d at 1088 (observing that while the states were British colonies, they lacked the power to "enter into treaties of peace or alliance"). Rather, "the adoption of the treaty provision in Article VI make[s] it clear that . . . agreements made *by the United States under the Articles of Confederation*, including the important peace treaties which concluded the Revolutionary War, would remain in effect." *Reid v. Covert*, 354 U.S. 1, 16-17 (1957) (emphasis added).

The Andros Order plainly could not have been made under the "Authority of the United States," which did not exist in 1676 when the Order was executed.

U.S. Const. art. VI, cl. 2; *see Mattaponi*, 621 S.E.2d at 95; *see also* Restatement of the Law of Am. Indians: Treaties with Indian Tribes §5 cmt. h (Am. L. Inst. 2024) ("Indian treaties with American colonies or states before the Articles of Confederation . . . are not treaties entitled to status under the Supremacy Clause."). Thus, the plain text of the Supremacy Clause does not support plaintiffs' assertion that the Andros Order is a federal treaty that was ratified under the Constitution's Supremacy Clause and binding on the United States today.

Plaintiffs cite to no authority supporting their argument that pre-Confederal treaties with a sovereign tribe, such as the Andros Order, were ratified through the adoption of Article VI of the Constitution. When pressed at oral argument for authority supporting their position, plaintiffs cited two cases: *Gristede's Foods, Inc. v. Unkechuage Nation*, 660 F. Supp. 2d 442 (E.D.N.Y. 2009), and *Trustees of Dartmouth College v. Woodward*, 17 U.S. (4 Wheat.) 518 (1819). Neither of these cases supports the conclusion that a pre-Confederal treaty between the British Crown and a sovereign Native American tribe, like the Andros Order, binds (or ever bound) the United States.

First, plaintiffs contend that because *Gristede's* recognized the Nation as a tribe under the federal common law, the Orders and treaties the Nation entered into with the British Crown are now "effective under the Constitution." Oral Argument at 9:06. *Gristede's* does not support this claim. In *Gristede's*, a supermarket chain brought various claims against the Nation arising from the Nation's "tax-free cigarette sales and advertising." 660 F. Supp. 2d at 445. The Nation moved to dismiss for lack of subject matter jurisdiction, asserting immunity "from suit by virtue of [its] sovereign status as [an] Indian tribe[]." *Id.* The *Gristede's* Court found that the Nation "is a 'tribe'" under federal common law and "enjoys sovereign immunity" from suit. *Id.* at 465. But such common law recognition says nothing about whether the United States has ratified the Andros Order. Rather, *Gristede's* simply applies the well-established principle that "tribes possess the common-law immunity traditionally enjoyed by sovereign powers." *Oneida Indian Nation v. Phillips*, 981 F.3d 157, 170 (2d Cir. 2020).

Second, at oral argument and in its briefing before this Court, the Nation relied on *Trustees of Dartmouth College* to argue that we should deem the Andros Order "a contract protected under the Contract Clause of the U.S. Constitution," which cannot be altered or amended by the New York legislature. Reply Br. at

22-23; *see also* Appellants' Br. at 25-56. *Trustees of Dartmouth College* has nothing to do with the Supremacy Clause; rather, that case held that the charter of Dartmouth College, which had been granted by the British Crown, is a contract that could not be impaired by the State of New Hampshire without violating the Contracts Clause of the Constitution. *See* 17 U.S. at 650. That case, however, has no relevance here because the Nation did not plead a Contracts Clause claim. Thus, whether the Andros Order is a contract protected by the Contracts Clause is not before us. *See, e.g.*, *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (recognizing that a party may not amend its pleadings through statements made in its briefs or its opposition to the motion for summary judgment).

In sum, for the reasons stated, the Andros Order is not federal law binding on the United States, based on either the Debts and Engagements Clause or the Supremacy Clause of the United States Constitution. The Andros Order therefore does not preempt New York's regulations governing the harvesting of American glass eels in off-reservation New York waters.

## IV.  <u>Conclusion</u>

Because our conclusion that the Andros Order is not federal law is dispositive of this appeal, we need not address the parties' remaining arguments.

Accordingly, for the reasons stated, the District Court appropriately entered

summary judgment in defendants' favor, and we AFFIRM the judgment of the

District Court.